**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATHERINE JACOB, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>NATIONAL GENERAL INSURANCE COMPANY and WELLS FARGO BANK, N.A., D/B/A WELLS FARGO DEALER SERVICES,<br><br>      Defendants. | Civil Action No.: _____<br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Katherine Jacob ("Plaintiff") files this complaint, individually and on behalf of all others similarly situated (the "Class"), against National General Insurance Company ("National General") and Wells Fargo Bank, N.A., doing business as Wells Fargo Dealer Services ("Wells Fargo") (collectively "Defendants"). The allegations herein are based upon personal knowledge as to matters concerning Plaintiff and her own acts, and upon information and belief as to all other matters. The allegations that are not based on Plaintiff's personal knowledge result from Plaintiff's counsel's investigation.

1

## INTRODUCTION

1.      Wells Fargo and National General schemed to steal hundreds millions of dollars from unsuspecting automobile purchasers by foisting on them unwanted and unneeded automobile insurance costs.

2.      As has apparently become par for the course for Wells Fargo, it accepted "full responsibility" and admitted to the fraud, but only *after* it was caught and outed by an investigation piece in the New York Times, based on a leaked report commissioned by Wells Fargo itself. National General has kept its mouth shut, as it did for the previous ten years of participating in— and benefitting from—the scheme.

3.      Defendants have enjoyed the spoils of their scheme off the backs of unsuspecting borrowers through a coordinated effort—Wells Fargo would lure in consumers for auto financing; as a part of the auto financing, Wells Fargo would send the borrower's information to its cohort in the enterprise, National General, to tack on additional collateral protection insurance, sold by, of course, National General.  In doing so, National General generated hundreds of millions of dollars of fraudulent proceeds.

4.      Like National General, Wells Fargo benefited in several ways from the enterprise. And not just from the kickbacks it received from National General for many of the policies.  In addition, Wells Fargo benefited from significantly higher interest costs charged to the borrower for the auto financing (discussed more below), and additional fees and costs Wells Fargo charged when cars were (unlawfully) repossessed, which Wells Fargo admits was at least 20,000 (its own consultant places the number at 25,000).

5.      Hundreds of thousands of consumers fell victim to the orchestrated fraud by Wells Fargo and the insurance underwriter, National General, causing millions of dollars of additional costs, fees, delinquencies and even repossessions.

6.      In July 2016, Wells Fargo retained a consultant to determine the scope of the fraud. The results were staggering.  From 2012 through 2016:

- More than 800,000 consumers were charged, and paid for, auto insurance they didn't need;

- Some of those consumers are still paying;

- The illegal scheme pushed 274,000 consumers into delinquency;

- 25,000 consumers suffered the wrongful repossession of their vehicle, and the devastating costs and consequences of that;

- In many instances, consumers were never informed of the insurance before it was charged and deducted from their bank accounts;

- Wells Fargo received myriad complaints from consumers regarding the unneeded and unwanted insurance, but Wells Fargo continued harassing them for payment.

7.      On the heels of the fake accounts scam and cover-up, and literally concurrent with a Department of Justice finding that Wells Fargo violated the Servicemembers Civil Relief Act by illegally repossessing service members' vehicles while they were on active duty, Wells Fargo's conduct here follows a similar pattern—exploiting customers, concealing the misconduct, taking the money, and then faking contrition only after getting caught.

8.      Plaintiff brings this action to test the very foundation of Wells Fargo's official statement (after being caught) taking "full responsibility."

9.      As a result of Defendants' fraudulent conduct, not only did Plaintiff and the class members have to pay insurance premiums, but as a result of those fraudulent charges, the class members incurred delinquency charges, late fees, and even had their cars repossessed.

10.     Defendants' conduct pushed thousands of car buyers into loan defaults and repossessions by charging unwanted insurance.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000[1] and is a class action in which there are at least one hundred members of the putative class and members of the class of plaintiff are citizens of states different from Defendants.  Further, more than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.  Plaintiff is a citizen of Alabama.  Defendants are citizens of various other states but are registered to do business in New York.

12.     This Court also has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1961, 1962, and 1964.

13.     This Court has personal jurisdiction over Defendants under 18 U.S.C. §1965.

14.     Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

15.     Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant National General's principal place of business is in this District, and all Defendants'

---

[1] In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the proposed class members' claims are aggregated.  28 U.S.C. § 1332(d)(6).

contacts are sufficient to subject them to personal jurisdiction in this District, and, therefore, Defendants reside in this District for venue purposes.  Alternatively, venues lies within this judicial district under 28 U.S.C. § 1391(b)(2) because the acts giving rise to the claims at issue in this lawsuit occurred, among other places, in this District.

## PARTIES

*Plaintiff*

16.     Katherine Jacob is an individual and a citizen of Birmingham, Alabama.  Ms. Jacob financed a 2006 Mazda through Wells Fargo, bearing loan number 7920069412.  Ms. Jacob was a victim of the fraud.  Despite having appropriate insurance of her own, Wells Fargo imposed forced CPI insurance on her, ratcheted up her monthly payment, charged her late fees, and issued negative credit events to the credit bureaus.

*Defendants*

17.     National General Insurance Company is an insurance company, headquartered at 59 Maiden Lane, 38th Floor, New York, New York 10038.  National General was formerly known as the GMAC Insurance Group.

18.     Wells Fargo Bank, N.A., doing business as Wells Fargo Dealer Services, specializes in home and auto loans for consumers.  It lists its principal place of business as South Dakota.  Wells Fargo ascribed internal file number 3030-0045 to Ms. Jacob's loan.

## FACTUAL ALLEGATIONS

19.     Collateral protection insurance, also known as forced insurance, serves as protection to lenders for collateral backing loans to borrowers.

20.     While forced mortgage insurance is common, forced auto insurance is significantly less common.

21.     The principles of the two forms of forced insurance, however, are the same.

22.     On its website[2] regarding forced mortgage insurance, but equally applicable to forced auto insurance, Wells Fargo states:

Here's why it's best to avoid lender-placed insurance:

- **Cost.** The premiums for lender-placed insurance are usually more expensive.

- **Coverage.** You usually get less coverage than if you purchased a policy on your own.

23.     Wells Fargo also represents the following on its website[3]:

Will Wells Fargo purchase lender-placed insurance without my knowledge?

No.  If we find a problem with your insurance, we'll send you letters explaining what you need to do.  If we still don't receive acceptable proof of insurance, we'll let you know we're getting a lender-placed policy for you.

24.     That was untrue.

25.     As the New York Times first revealed just days ago, Wells Fargo and National General joined forces to defraud, at a minimum, hundreds of thousands of Wells Fargo's own customers by purchasing lender-placed auto insurance that was unneeded, unwanted, and often unknown by the consumer.

26.     Upon securing auto financing from Wells Fargo, consumers' borrowing information was then routed to National General, which advertises itself as providing consumers

---

[2] https://www.wellsfargo.com/mortgage/manage-account/insurance/lender-placed-insurance/.

[3] https://www.wellsfargo.com/mortgage/manage-account/insurance/lender-placed-insurance/faqs/.

with "the policy that works best for you" and "designed to give you the best possible auto insurance coverage—affordably—from your first car to your 21st."[4]  That was also untrue.

27.     National General's website also proclaims: "We're here when you need us. Count on it."

28.     The thrust of this case is that as a result of the illicit scheme with Wells Fargo, National General was also there when automobile purchasers *didn't* need them.

29.     Wells Fargo's own commissioned report reveals that Wells Fargo and National General imposed unwanted and unneeded insurance on more than 800,000 purchasers.

30.     Rather than truthfully and carefully verifying whether borrowers already had sufficient insurance on the financed automobile, thus obviating the need for forced insurance (collateral protection insurance), Defendants didn't do so.

31.     As such, hundreds of thousands of consumers were charged for forced insurance that they didn't need.  But the damages didn't stop there.

32.     As Wells Fargo itself admits, the cost of the forced insurance it procured through National General may be "considerably more expensive" than what the consumer could purchase on her own and may even be less comprehensive.

33.     Wells Fargo has specifically admitted that victims of the fraud include customers who unnecessarily paid the forced insurance, customers who received no notice whatsoever of the forced insurance, and customers whose autos were repossessed because of the additional costs of the unnecessary forced insurance.  As for the latter, Wells Fargo admitted that the "premiums may have contributed to a default that led to their vehicle's repossession."

---

[4] http://www.nationalgeneral.com/auto-insurance/.

34.     On its website discussing how payments are applied to a consumer's auto loan, Wells Fargo outlines how the structure of such payments increased the overall interest consumers paid on their loans.  The order of payments was: interest, Collateral Protection Insurance ("CPI," which is forced insurance), and only then would payments be applied to principal.  This payment structure increased the interest Wells Fargo extracted because it reduced the number of dollars that went to reducing the outstanding principal on the loan.

35.     And the ramifications of the payment structure had even more damaging implications for consumers.  By ordering the payments in that way, Wells Fargo maximized the likelihood of the consumer defaulting on the principal, thus generating unlawful repossessions and other negative consequences.

36.     And yet again, Wells Fargo ginned profits from the unlawful repossessions in the form of reinstatement fees and other charges.

37.     And consistent with the illicit profit motive, according to Wells Fargo's own report, it was aggressive in repossessions, with some customers actually enduring multiple repossessions.

38.     Not only did Wells Fargo benefit from the forced insurance in the ways described above, but they also shared in National General's commissions for the improper insurance until approximately 2013.  It is unknown, at this time, whether Wells Fargo actually received some type of consideration from National General after this timeframe.

39.     Defendants actively concealed the program of imposing unnecessary insurance charges, often masked through consumers not noticing the embedded forced insurance charges automatically swept through their checking account through electronic payments made through the Automated Clearing House ("ACH") Network.

40.     Plaintiff was not apprised of the salient facts underlying their claims and did not, and could not, have ascertained those facts.

41.     The damages suffered by consumers were myriad and wide-reaching, including at least the following: (a) unnecessary insurance premium charges; (b) improper interest charges caused by the forced insurance charges and payment structure employed by Wells Fargo; (c) improper late fees and reinstatement fees; (d) charges for insufficient funds based on the elevated payments because of the improper forced insurance; (e) forced delinquencies; (f) damage to consumers' credit reports based on negative credit events; (g) improper repossessions and the crippling consequences thereof.

42.     After it found out the New York Times was going to release the facts underlying its latest scandal, Wells Fargo stated: "We take full responsibility for our failure to appropriately manage the [auto insurance] program and are extremely sorry for any harm this caused our customers, who expect and deserve better from us."  Crocodile tears, at best, from a company that has, of late, developed a cottage industry of scamming its own customers.

## TOLLING OF THE STATUTES OF LIMITATION

43.     Plaintiff could not have discovered, through the exercise of reasonable diligence, Wells Fargo's ongoing fraud, omissions, and misrepresentations through the exercise of reasonable diligence.

44.     Among other things, neither Plaintiff nor the other class members knew or could have known that Wells Fargo had assessed unlawful fees against their accounts.  The causes of action alleged herein did or will only accrue upon discovery of the true nature of the charges assessed against Plaintiff's and class members' accounts because of Defendants' concealment.

45.     Throughout the time period relevant to this action, Wells Fargo concealed from and failed to inform Plaintiff and the other class members vital information about their accounts. Defendants knowingly, affirmatively, and actively concealed the true nature of the assessed auto insurance premiums against their accounts.

46.     Despite their knowledge of the unlawful fees assessed against Plaintiff and the other class members' accounts, Defendants kept Plaintiff and the other class members ignorant of vital information essential to the pursuit of their claims.  Plaintiff and the other class members relied and were reasonable in relying upon Defendants' affirmative and active concealment.  As a result, neither Plaintiff nor the other class members could have discovered Wells Fargo's fraud.

47.     Defendants were under a continuous duty to disclose to Plaintiff and the other class members the true nature of the fees assessed against their accounts, but chose to knowingly conceal the information from its customers.

48.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other class members have sustained as a result of Defendants' wrongful conduct, by virtue of the discovery rule, the doctrine of fraudulent concealment, and estoppel.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. Specifically, Plaintiff seeks to represent the following class:

> All residents of the United States who obtained an auto loan through Wells Fargo Bank, N.A., d/b/a Wells Fargo Dealer Services, or its subsidiaries or divisions, who were assessed charges for CPI auto insurance.

In the alternative, Plaintiff seeks to represent the following state-wide class:

All residents of the State of Alabama who obtained an auto loan through Wells Fargo Bank, N.A., d/b/a Wells Fargo Dealer Services, or its subsidiaries or divisions, who were assessed charges for CPI auto insurance.

50.     Excluded from the class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers and their immediate family members; and Court staff assigned to this case.  Plaintiff reserves the right to modify or amend these class definitions, as appropriate, during the course of this litigation.

51.     This action may be brought and maintained pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and satisfies all predicate requirements

52.     **Numerosity: Federal Rule of Civil Procedure 23(a)(1).**  The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believe that there are hundreds of thousands of Class members, the precise number of Class members is unknown to Plaintiff, but will be determined through discovery.   Class members' names and addresses are available from Defendants' records, and Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

53.     **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual class members, including, without limitation:

    a.      Whether Defendants concealed or failed to properly disclose CPI insurance to its customers;

    b.      Whether Defendants' practice of charging CPI auto insurance premiums to borrowers is unlawful;

11

     c.     Whether Defendants omitted material facts in documents provided to Plaintiff and the other Class members;

     d.     Whether Defendants engaged in a pattern or practice of racketeering;

     e.     Whether Plaintiff and the other Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

     f.     the amount and nature of relief to be awarded to Plaintiff and the other Class members.

54.    **Typicality: Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

55.    **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

56.    **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.  Such individual actions would create a risk of adjudications which would be dispositive of the interests of other Class members and

impair their interests.  Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive relief or corresponding declaratory relief appropriate.

57.     **Superiority: Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford litigation, the court system could not.   Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS ALLEGED

## FIRST CAUSE OF ACTION

**Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")**
**18 U.S.C. § 1962(c)**
*On Behalf of Plaintiff and the Nationwide Class*

58.     Plaintiff incorporates Paragraphs 1-57, as though fully set forth herein.

59.     Plaintiff brings this cause of action on behalf of the nationwide class against all Defendants.  At all relevant times, each of Defendants has been a "person" within the meaning of 18 U.S.C. § 1961(3), because each was capable of holding "a legal of beneficial interest in property."

60.     Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

61.     Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.  18 U.S.C. § 1962(d).

62.     At all relevant times, Defendants, along with other individuals and entities, including unknown third parties, operated an association-in-fact enterprise, which was formed for the purpose of maximizing profits by unlawfully charging customers for undisclosed collateral insurance policies, and through which enterprise they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4).  The enterprise is called the "Enterprise."  The activities of the Enterprise affected interstate commerce through a pattern of racketeering activity.

63.     At all relevant times, the Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in Defendants' unlawful profit-making scheme.

64.     The association-in-fact Enterprise consisted of at least Wells Fargo Bank, N.A., and National General Insurance Company.  While members of the Enterprise participate in and are part of the enterprise, they also have an existence separate and distinct from the enterprise.  The Enterprise has a systematic linkage because there are agreements, coordination activities, contracts, and financial agreements between the Defendants.

65.     At all relevant times, the Enterprise:

       a.      had an existence separate and distinct from each RICO Defendant;

      b.      was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and

      c.      was an ongoing and continuing organization consisting of legal entities, including Defendants, and other entities and individuals associated for the common purpose of imposing unlawful and undisclosed collateral insurance on class members through false and misleading sales tactics, omissions, and fraud, and deriving profits and revenues from those activities.

66.      Each member of the Enterprise shared in the bounty generated by the enterprise.

67.      The Defendants through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to impose undisclosed collateral insurance on contracts.

68.      The Enterprise engaged in, and its activities affected, interstate and foreign commerce, because it involved commercial activities across state boundaries.  Defendant Wells Fargo has Defendant National General verify whether a borrower maintains required insurance and then underwrites a policy on behalf of the borrower, providing lending documents that fail to properly disclose the insurance, providing statements that fail to properly disclose the insurance premiums, and arranging the order of charges to borrowers' accounts to cause borrowers to become delinquent.

69.      Defendants' systematic schemes to unlawfully charge premiums, interest, and other charges for unnecessary insurance policies on the accounts of borrowers who have auto loans from Defendants, as described above, was facilitated by the use of the United States Mail and wire.

Defendants' schemes constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1), as acts of mail and wire fraud, under 18 U.S.C. §§ 1341, 1343.

70.     Defendants used the mail and wire in furtherance of their scheme to defraud its auto loan customers by obtaining money from borrowers using false or fraudulent pretenses.   The Enterprise provided insurance policies, lending documents, auto loan statements, payoff demands, or proofs of claims to borrowers through the mail or wires.   Through those means, the Enterprise demanded that borrowers pay the undisclosed insurance premiums.   Defendants also accepted payments and engaged in other correspondence in furtherance of their scheme through the mail and wire.

71.     The insurance policies were unlawful.   Thus, Defendants' representations that the premiums and related charged were owed were fraudulent.   In an effort to pursue their fraudulent scheme, Defendants knowingly fraudulently represented that the premiums and charges were owed.

72.     Defendants made false statements using the Internet, telephone, facsimile, United States Mail, and other interstate commercial carriers.   These statements were material to Plaintiff and the other Class members.

73.     Each of these acts constituted an act of mail fraud for purposes of 18 U.S.C. § 1341.

74.     Using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about the premiums and fees to borrowers, to pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of 18 U.S.C. § 1343.

75.     The foregoing constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).  All of the foregoing acts are part of the nexus of the Enterprise and involved similar participants, a similar purpose, and similar impact on the class.

76.     As a direct and proximate cause of these violations of 18 U.S.C. § 1962(c) and (d), Plaintiff and the other Class members have suffered damages, and Defendants are liable to Plaintiff and the other Class members for treble damages, together with all costs of this action, plus attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION

**Violations of the Racketeer Influenced and Corrupt Organizations Act,
Conspiracy to Violate RICO
18  U.S.C. § 1962(d)
*On Behalf of Plaintiff and the Nationwide Class*

77.     Plaintiff incorporates Paragraphs 1-76, as though fully set forth herein.

78.     Plaintiff brings this cause of action on behalf of the nationwide class against all Defendants for conspiring to violate 18 U.S.C. § 1962(c).  Defendants were aware of the nature and scope of the Enterprise's unlawful scheme, and agreed to participate in it.

79.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff and the other Class members have been injured by the predicate acts which make up Defendants' patterns of racketeering activity in that unlawful insurance premiums were assessed on their auto loan accounts.

## THIRD CAUSE OF ACTION

**Violations of the South Dakota Deceptive Trade Practices and Consumer Protection Law,
81 S.D. Codified Laws §§ 37-24-1, *et seq.*
*On Behalf of Plaintiff and the Nationwide Class, Against Wells Fargo Bank, N.A.*

80.     Plaintiff incorporates Paragraphs 1-57, as though fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of a nationwide class of consumers against Wells Fargo.  Nominally the conduct alleged in this count was carried out by Wells Fargo, headquartered in South Dakota.  However, regardless of which specific entity engaged in the alleged conduct, Wells Fargo is legally responsible for the conduct for the reasons set forth above.

82.     The South Dakota Deceptive Trade Practices and Consumer Protection Law is codified at S.D. Codified Laws §§ 37-24-1, *et seq*.

83.     Plaintiff and the other Class members are "persons" under the statute.

84.     Wells Fargo engaged in trade and commerce, as those terms are defined under the statute.  Wells Fargo charging Plaintiff and the other Class members for unnecessary and unrequested auto insurance policies, fraudulent statements regarding the charges, and omissions of material facts, as set forth herein, all constitute unlawful, fraudulent, and unfair practices.

85.     Wells Fargo concealed and suppressed material facts concerning the undisclosed auto insurance. Wells Fargo failed to properly disclose the policies and failed to disclose the policies were unnecessary and unlawful.

86.     Plaintiff and the other Class members relied on Wells Fargo's fraudulent representations that the CPI auto insurance charges were lawful and necessary and required to maintain their accounts in good standing and avoid repossession of their vehicles.

87.     Plaintiff and the other Class members were damaged by paying for unlawful premiums and other charges related to the CPI auto insurance policies.

88.     Wells Fargo's conduct is an incurable deceptive act because it was done as part of a scheme with intent to defraud and mislead.

89.     As a result of Wells Fargo's conduct, Plaintiff and the Class members suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

**Violation of New York General Business Law, Deceptive Acts and Practices**
**N.Y. GBL § 349**
*On Behalf of Plaintiff and the Nationwide Class, Against National General*

90.     Plaintiff incorporates Paragraphs 1-57, as though fully set forth herein.

91.     Plaintiff brings this claim individually and on behalf of a nationwide class of consumers against National General.  The conduct alleged in this Complaint as attributable to National General originating in the State of New York.

92.     Plaintiff and other members of the Class are "consumers" in accordance with N.Y. GBL § 349.

93.     At all relevant times hereto, National General conducted trade and commerce in New York and elsewhere within the meaning of GBL § 349.

94.     National General concealed the following material facts from Plaintiff and the class members:

> a.      Together with Wells Fargo, it underwrote policies for automobile loans, which upon information and belief began in 2006;
>
> b.      That the insurance policies were more expensive than auto insurance that customers often already had obtained on their own; and
>
> c.      That the insurance—which was concealed and undisclosed—was unneeded.

95.     National General failed to disclose material facts from Plaintiff and Class members with respect to the unlawful insurance practices in underwriting policies for automobile insurance for policies that class members neither wanted nor needed.

96.     National General intended that Plaintiff and Class members rely on its acts of concealment and omissions in order to drive up profits for the sale of insurance.

97.     The forgoing acts, omissions, and practices proximately caused Plaintiff and Class members to suffer actual injury.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment and Restitution**
*On Behalf of Plaintiff and the Nationwide Class*

1.     Plaintiff incorporates Paragraphs 1-57, as though fully set forth herein.

2.     Plaintiff brings this claim individually and on behalf of a nationwide class of consumers. This equitable claim is pleaded in the alternative to Plaintiff's and the other Class members' legal claims.

3.     Plaintiff and the other Class members conferred a benefit on Defendants via the unlawful insurance premium charges, causing profits to inure to Defendants.   Defendants, however, failed to disclose their knowledge that Plaintiff and the other Class members paid unlawfully-charged insurance premiums.

4.     It would be inequitable, unconscionable, and unjust to permit Defendants to retain the benefit of these profits that they unfairly obtained from Plaintiff and the other Class members.

5.     Plaintiff and the other Class members, having been injured by Defendants, are entitled to restitution or disgorgement of profits as a result of Defendants' unjust enrichment, to the detriment of Plaintiff and the other Class members.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that this Court enter judgment in their favor and against Defendants on each Cause of Action of the Complaint and requests that the Court:

       a.      Issue an Order certifying the Class and/or any subclasses the Court deems appropriate, appointing Plaintiff as class representative and her undersigned counsel as Class Counsel, and directing that reasonable notice of this action be given by Defendants to all Class members;

       b.      Award to Plaintiff and the other Class members all damages—including treble damages—and equitable relief (including disgorgement) that the Court deems appropriate;

       c.      Award to Plaintiff and the other Class members all exemplary and/or punitive damages allowed by law that the Court deems appropriate;

       d.      Issue an injunction against the continued unlawful practices as set forth herein;

       e.      Award interest on any moneys wrongfully obtained from the date of collection through the date of entry of judgment in this action;

       f.      Grant Plaintiff and the other Class members their reasonable attorneys' fees and costs under any applicable fee shifting statutes; and

       g.      Grant Plaintiff and the other Class members such further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated:  July 31, 2017                Respectfully submitted,

                                     By:   */s/  Stephen J. Fearon*
                                           Stephen J. Fearon, Jr. (NY Bar No. 2432474)
                                           **SQUITIERI & FEARON, LLP**
                                           32 East 57th Street, 12th Floor
                                           New York, New York 10022
                                           Tel:  (212) 421-6492
                                           Fax:  (212) 421-6553
                                           stephen@sfclasslaw.com

                                           Adam J. Levitt*
                                           Amy E. Keller*
                                           Daniel R. Ferri*
                                           **DICELLO LEVITT & CASEY LLC**
                                           Ten North Dearborn Street, Eleventh Floor
                                           Chicago, Illinois  60602
                                           Telephone:  (312) 214-7900
                                           alevitt@dlcfirm.com
                                           akeller@dlcfirm.com
                                           dferri@dlcfirm.com

                                           W. Daniel "Dee" Miles, III*
                                           C. Lance Gould*
                                           **BEASLEY ALLEN CROW METHVIN
                                             PORTIS & MILES, P.C.**
                                           218 Commerce Street
                                           Montgomery, Alabama  36103
                                           Telephone:  (334) 269-2343
                                           Dee.Miles@beasleyallen.com
                                           Lance.Gould@beasleyallen.com

                                           Richard M. Elias*
                                           Greg G. Gutzler*
                                           Tamara M. Spicer*
                                           **ELIAS GUTZLER SPICER LLC**
                                           130 South Bemiston Avenue, Suite 302
                                           St. Louis, Missouri  63105
                                           Telephone:  (314) 274-3311
                                           relias@egslitigation.com
                                           ggutzler@egslitigation.com
                                           tspicer@egslitigation.com

                                           ***Counsel for Plaintiff and the Proposed Class***

* Will apply for *pro hac vice* admission

22